UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTIFIED NUTRACEUTICALS, INC., *a California Corporation*,<br><br>                                        Plaintiff,<br><br>v.<br><br>AVICENNA NUTRACEUTICAL, LLC, *a Georgia Limited Liability Company*,<br><br>                                        Defendant. | Case No.:  3:16-cv-02810-BEN-BGS<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On July 11, 2018, the Court withdrew the July 10, 2018 Order it issued on Defendant's motion for summary judgment. (Docket No. 46.)  This Order amends and replaces the Court's July 10, 2018 Order.

## INTRODUCTION

Plaintiff Certified Nutraceuticals, Inc. ("Certified") brings this false advertising and unfair business practice action against Defendant Avicenna Nutraceutical, LLC ("Avicenna").  Certified alleges Avicenna falsely advertised its collagen products as "patented" or processed using "patented formulas and production methods" because Avicenna never held any relevant patents.  Certified further alleges that, as a competitor also engaged in the sale of collagen products, it suffered damages in the form of diversion of business and loss of goodwill.

**PROCEDURAL HISTORY**

On November 15, 2016, Plaintiff filed its Complaint asserting three claims for relief: (1) false advertising under Section 43(a)(1)(B) of the Lanham Act; (2) unlawful business practices under California and Professions Code § 17200; and (3) False and Misleading Advertising under California and Business Professions Code § 17500. (Docket No. 1, "Compl.") Defendant's now move for summary judgment on all of Plaintiff's claims. (Docket No. 28.)

**BACKGROUND[1]**

Certified and Avicenna are competitors involved in the manufacture, distribution, and sale of raw ingredients for use in various dietary and nutritional products. In particular, both parties focus on producing and supplying collagen ingredients. Collagen is a complex structural protein, which provides strength and flexibility to skin, hair, and nails, and is an essential and major component of muscles, tendons, cartilage, ligaments, joints, and blood vessels. There are three main types of collagen: I, II, and III. Types I and III are primarily found in skin, tendon, and bone; Type II is predominantly found in articular cartilage.

In October 2016, Avicenna's website included the following statements:

> Avicenna Nutraceutical is a Georgia, United States based company with the primary focus on the manufacture and distribution of raw materials with a specific emphasis on Patented Chicken Sternum Type 2 Collagen.

> Avicenna is a raw materials company, which applies its patented formulas and production methods to process US chicken sternum into hydrolyzed/undernatured type 2 collagen.

///

---

[1] The following overview of facts is drawn from the pleadings and the admissible evidence submitted by the parties in litigating the pending summary judgment motion. The Court's reference to certain pieces of evidence is not an indication that it is the only pertinent evidence relied on or considered by the Court. The Court has reviewed and considered all the admissible evidence submitted by the parties.

(Docket No. 31-1, Decl. of Robert Tauler ("Tauler Decl.") ¶ 2, Ex. A at pp. 2-3.)[2] However, Avicenna admits it did not claim any relevant patents at that time. (Docket No. 5, Def.'s Answer ¶¶ 26-27; Tauler Decl. ¶ 9, Ex. H at p. 11.) Certified manufactures a collagen product, KollaGen II-xs ("KollaGen"), which competes with Avicenna's Type 2 Collagen product. (Docket No. 28-2, Decl. of Michael Adams ("Adams Decl.") ¶ 2, Ex. A at pp. 15-16.) KollaGen is covered by U.S. Patent No. 8,344,106 B1 ("the '106 Patent"). (*Id.* at pp. 176-79.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a summary judgment motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255.

The moving party bears the initial burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.* The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise

///

---

[2] Unless otherwise stated, the Court's reference to a page number in the parties' filings is to the page number generated by the CM/ECF system.

a genuine issue of material fact. *Anderson*, 477 U.S. at 252. There must be evidence on which the jury could reasonably find for the non-moving party. *Id.*

## DISCUSSION

Defendant advances three arguments in support of its motion summary judgment: (1) Plaintiff failed to raise a genuine issue of material fact that it suffered actual injury due to Defendant's false statements; (2) Plaintiff is barred from recovery under the unclean hands doctrine; and (3) Plaintiff cannot recover under the Lanham Act for what is essentially a claim for the false marking of an unpatented product, which may only be brought under Section 292 of the Patent Act.

The Court agrees Defendant is entitled to summary judgment on Plaintiff's Lanham Act claim because Plaintiff brings its claims with unclean hands. Summary judgment of Plaintiff's remaining state-law claims is also appropriate, because Plaintiff failed to establish it suffered actual injury as a result of Defendant's false statements.

**A.     Unclean Hands Doctrine**

"Unclean hands is a defense to a Lanham Act infringement suit." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir. 1987)) (internal quotation marks omitted). The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,* 890 F.2d 165, 173 (9th Cir. 1989). To prevail on a defense of unclean hands, a defendant must demonstrate by clear and convincing evidence: (1) "that the plaintiff's conduct is inequitable;" and (2) "that the conduct relates to the subject matter of [the plaintiff's] claims." *Fuddruckers,* 826 F.2d at 847 (citing *CIBA–GEIGY Corp. v. Bolar Pharm.,* 747 F.2d 844, 855 (3d Cir. 1984)); *see also TrafficSchool.com, Inc. v. Edriver, Inc.,* 653 F.3d 820, 833 (9th Cir. 2011) (holding that a defendant must demonstrate that an unclean hands defense applies with "clear, convincing evidence"). Both are demonstrated here.

However, even if a defendant satisfies both requirements, a court must not automatically apply the doctrine of unclean hands and "permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law." *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) (quoting *Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 387 (1944)). "Rather, determining whether the doctrine of unclean hands precludes relief requires balancing the alleged wrongdoing of the plaintiff against that of the defendant, and 'weigh[ing] the substance of the right asserted by [the] plaintiff against the transgression which, it is contended, serves to foreclose that right.'" *Northbay Wellness Grp., Inc. v. Beyries,* 789 F.3d 956, 960 (9th Cir. 2015) (quoting *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 350 (9th Cir. 1963)).

 1. *Whether Defendant Has Demonstrated Plaintiff Engaged in Inequitable Conduct with Clear and Convincing Evidence*

In the Ninth Circuit, "only a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." *Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982) (citing *Carpet Seaming Tape Licensing Corp. v. Best Seam Inc.*, 616 F.2d 1133, 1138-39 (9th Cir. 1980); *W. R. Grace & Co. v. W. U. S. Indus., Inc.*, 608 F.2d 1214, 1218 (9th Cir. 1979)).

Defendant contends Plaintiff "admitted to engaging in the same improper conduct for which it faults [Defendant] – namely, publishing false statements about a product being 'patented' before the patent had been issued." (Mot. at p. 12.) To support its contention, Defendant presents evidence that over a year before the United States Patent and Trademark Office ("USPTO") issued the '106 patent,[3] Plaintiff was falsely stating in a November 15, 2011 press release on its website: "We developed *Patented* kollagen II-

---

[3] The '106 Patent was issued on January 1, 2013. (Adams Decl. ¶ 11, Ex. J.)

5

xs [sic] – 100% Avian Sternum Collagen Type II for joint health[.]" (Adams Decl. ¶ 12, Ex. K.) (emphasis added.) Defendant also presents evidence that this false statement appeared in an October 25, 2011 press release issued by Infiniti Marketing Group, a company "acting as Certified Sales & Marketing Department [sic]." (*Id.* ¶ 13, Ex. L.)

In its opposition, Plaintiff does not object or otherwise contest the accuracy or publication of either press release. Instead, Plaintiff asserts the statements made prior to the issuance of the '106 Patent were not false or misleading because "the KollaGen product was covered by [U.S. Patent No. 6,323,319 ("the '319 Patent")], issued on or about November 11, 2001." (Opp'n at p. 4; Docket No. 31-21, Decl. Ahmad Alkayali ("Alkayali Decl.") ¶ 3.) But as Defendant points out in its reply, Plaintiff was not an owner, assignee, or licensee of the '319 Patent in 2011.[4]

Since the initial assignment in 1997, neither Plaintiff nor Mr. Alkayali appears to have held any interest or license for the '319 Patent. *See* n.4, below. This may be due to the fact that on May 3, 2002, the Orange County Superior Court[5] issued a permanent injunction against Mr. Alkayali which, *inter alia*, permanently enjoined Mr. Alkayali, his "officers, agents, employees, representative, and all persons acting in concert or participating with [him]    . . . from engaging in, committing, or performing, directly or indirectly, by any means whatsoever, any of the following acts":

> A.   Transferring, assigning, licensing, hypothecating, enforcing, selling, granting, encumbering, or in any way

---

[4] The Court takes judicial notice that the '319 Patent was issued on November 27, 2001, and that Ahmad Alkayali, Plaintiff's founder and current Chief Executive Officer (*see* Alkayali Decl. ¶ 1), assigned his interest in the '319 Patent while it was pending on December 2, 1997. *See* USPTO Website, *Patent Assignment Search for Patent No. 6,323,319*, *available at* https://assignment.uspto.gov/patent/index.html#/patent/search (last visited July 3, 2018). *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("The Court may take judicial notice of "matters of public record.") (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

[5] *BioCell Tech. v. Alkayali*, Orange County Superior Court Case No. 00CC06708, *May 3, 2002 Judgment*, *aff'd*, 2004 WL 114699, at *1 (Cal. Ct. App. Jan. 26, 2004).

changing the legal or equitable title to the patent issued by the United States Patent Office as US Patent # 6,025,327, or any continuation thereof (collectively referred to as "327 Patent").[6]

B. Manufacturing, distributing, offering for sale, or selling any of the product or goods covered under the 327 Patent."

. . .

D. From interfering, directly or indirectly, with BioCell's manufacture, distribution, offer for sale, selling or licensing the 327 Patent or any product or good covered under the 327 Patent.

(Docket No. 33-4, Supp. Decl. of Brian Berggren ("Berggren Decl.") ¶ 4, Ex. O at pp. 8-9.)

Plaintiff did not object or otherwise dispute the authenticity or continuing applicability of the permanent injunction order. Nor does Plaintiff offer any other rebuttal evidence that its statements were not false or misleading, other than the false statement in Mr. Alkayali's declaration that he was the "assignee of Patent No. 6,323,319."[7] (Alkayali Decl. ¶ 3.) Thus, the Court agrees with Defendant that it can reasonably conclude that either of two scenarios occurred at the time Plaintiff made the 2011 statements about its KollaGen product: (1) KollaGen is only covered by the '106 Patent; or (2) prior to the issuance of the '106 Patent, KollaGen was covered by the '319 Patent. In either scenario, it appears Plaintiff knowingly made false statements regarding the patented nature of KollaGen – either because it knew the '106 Patent had not yet been

---

[6] The Court takes judicial notice that the '319 Patent is "a continuation of . . . U.S. Pat. No. 6,025,327 [(the '327 Patent")]." *See* USPTO Website, *USPTO Patent Full-Text and Image Database Search for Patent No. 6,323,319*, *available at* http://patft.uspto.gov/netahtml/PTO/srchnum.htm (last visited July 3, 2018).

[7] The Court further notes Plaintiff's Complaint admits the '319 Patent is "related" to the '327 Patent, and falsely asserts Mr. Alkayali "is listed as the assignee" of the '319 Patent. (Compl. ¶¶ 19-20.)

issued, or because it knew it had no right to manufacture, distribute, offer for sale, or sell any goods under the '319 Patent because it was a continuation of the '327 Patent.

For all of these reasons, the Court finds Defendant has met its burden of demonstrating Plaintiff's wrongfulness, willfulness, and bad faith in engaging in inequitable conduct with clear and convincing evidence. *Pfizer*, 685 F.2d at 359 (citations omitted).

### 2. *Whether Defendant's Unclean Hands Defense Relates to Plaintiff's False Advertising Claim*

The second requirement of the unclean hands defense does not require "precise similarity" between the plaintiff's inequitable conduct and the plaintiff's claims, but the misconduct "must be 'relative to the matter in which [the plaintiff] seeks relief.'" *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010) (alterations in original) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945)). Stated differently, the defense should only be applied "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *U-Haul Int'l, Inc. v. Jartran, Inc.,* 522 F. Supp. 1238, 1254 (D. Ariz. 1981), *aff'd,* 681 F.2d 1159 (9th Cir. 1982) (internal citation omitted). The relevant inquiry is not "whether the plaintiff's hands are dirty," but whether the plaintiff "dirtied them in acquiring the right" presently asserted or whether "the manner of dirtying renders inequitable the assertion of such rights against the defendants." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) (quoting *Republic Molding Corp.*, 319 F.2d at 349 (internal quotation marks omitted).

Plaintiff contends "there is no good faith basis for Defendant to claim that statements made in 2011 have an *immediate* and necessary relationship" to Plaintiff's Complaint. (Opp'n at p. 12) (emphasis in original). But the Court has little difficulty in finding Plaintiff's inequitable conduct has an immediate and necessary relationship to the
///

equitable remedies he seeks.[8]  It is undisputed that Plaintiff's KollaGen product competes with Defendant's Type 2 Collagen product.  (Adams Decl. ¶ 2, Ex. A at pp. 15-16.)  It is also undisputed that the false statements Plaintiff attributes to Defendant (and which make up the basis for his claims for relief) are with respect to the patented nature of Defendant's Type 2 Collagen product.  (Compl.; Tauler Decl. ¶ 2, Ex. A at pp. 2-3.)

In sum, it cannot seriously be argued that Plaintiff's inequitable conduct in making false statements regarding the patented nature of the KollaGen product does not have an "immediate and necessary relation to the equity that [it] seeks." *Henderson*, 135 S. Ct. at 1783 n.1; *see also Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D. Cal. 1996) ("The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, *i.e.*, it must pertain to the very subject matter involved and affect the equitable relations between the litigants.") (quoting *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists,* 227 Cal. App. 2d 675, 728-29 (1964)) (internal quotation marks omitted).

After weighing the substance of Plaintiff's claims against the evidence of Plaintiff's inequitable conduct as established by Defendant, the Court finds Plaintiff's inequitable conduct warrants application of the unclean hands doctrine.  *Northbay Wellness Grp., Inc.,* 789 F.3d at 960.  Accordingly, Defendant's motion for summary judgment on Plaintiff's Lanham Act claim is **GRANTED**.

## B.     Plaintiff's California State-Law Claims

Plaintiff's two remaining claims arise under California's unfair competition law ("UCL") and false advertising law ("FAL").  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and any act prohibited by the FAL.  Cal. Bus. & Prof. Code § 17200.  The FAL generally prohibits advertising that contains "any statement . . . which is untrue or

---

[8] The Complaint prays for an accounting and disgorgement, restitution, and a permanent injunction.

9

3:16-cv-02810-BEN-BGS

misleading, and which is known, or . . . should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. Unlike a Lanham Act claim, the unclean hands doctrine is not available as a defense to bar claims for unfair business practices act violations under Cal. Bus. & Prof. Code § 17200 et seq. *Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 543 (2008) ("Courts have long held that the equitable defense of unclean hands is not a defense to an unfair trade or business practices claim based on violation of a statute.") (citations omitted).

Defendant argues summary judgment on Plaintiff's UCL and FAL claims is appropriate because there is no genuine dispute that Plaintiff did not suffer actual injury as a result of Defendant's false statements. To prevail on a claim under either the UCL or FAL based on false advertising or promotional practices, "it is necessary only to show that 'members of the public are likely to be deceived.'" *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2013) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)) (internal quotation marks omitted).

In 2004, California passed Proposition 64, which amended the UCL's and FAL's standing requirements for private actions for relief. *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 915-16 (Cal. Ct. App. 2016) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009)). Subsequently, to have standing to advance UCL and FAL claims, a private plaintiff must prove they suffered: (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*," and (2) that the economic injury "was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Veera*, 6 Cal. App. 5th at 916 (quoting *Kwikset Corp.*, 51 Cal. 4th at 322) (emphasis added in original).

The Ninth Circuit recognizes that "California's unfair competition law defines 'injury in fact' more narrowly" than what is required for Article III standing. *See TrafficSchool.com*, 653 F.3d at 825 n.1 ("Plaintiffs filing an unfair competition suit [under California law] must prove a pecuniary injury . . . and 'immediate' causation . . [.]

Neither is required for Article III standing.") (internal citations omitted). Thus, the Court construes Defendant's argument as an attack on Plaintiff's standing as a separate element of its UCL and FAL claims, rather than an attack on Plaintiff's Article III standing.

To support its position, Defendant submitted evidence that: 1) Plaintiff could only identify two customers it "lost" as a result of Defendant's false statements: Emenee Distributors, LLC ("Emenee") and Vibrant Health ("Vibrant"); and 2) these customers' decisions to purchase collagen products from Defendant were not based on the false statements. (Adams Decl. ¶¶ 2, 3, Ex. A at pp. 12-15 & Ex. B at p. 9.) [9]

Specifically, Defendant provided the declaration of Emenee's owner, Edward J. Stroup, which expressly states his decision to purchase Defendant's Collagen Type II Product "was not based on any representations by [Defendant] regarding its 'patents' or the 'patented' nature of the Collagen Type II Product." (Adams Decl. ¶ 4, Ex. C.) Rather, Mr. Stroup's decision was based "on the quality of [Defendant's] Collagen Type II Product[.]" (*Id.*)

Similarly, Defendant provided the declaration of Mark Timon, Vibrant's founder and formulator. (Adams Decl. ¶ 5, Ex. D.) Mr. Timon states Vibrant purchased KollaGen from Plaintiff from December 2012 to February 2014, but stopped purchasing KollaGen "because it proved to be inconsistent in flavor, texture, and performance." (*Id.*) In 2016, Vibrant decided to "switch" to Defendant's Collagen Type II Product "to remedy multiple production, sales, and performance problems caused by [Plaintiff's KollaGen]." (*Id.*) Like Emenee, its decision to purchase Defendant's Collagen Type II Product "was not based on or otherwise due to any representations by [Defendant] regarding 'patents' or the 'patented' nature of [Defendant's] Collagen Type II Product." (*Id.*) Instead, Vibrant "chose to purchase [Defendant's] Collagen Type II Product" because it considers it to be "superior in terms of quality" to Plaintiff's KollaGen. (*Id.*)

---

[9] Plaintiff's objections to this evidence are overruled.

As part of its opposition, Plaintiff submitted an expert declaration from Thomas Gourley. (Opp'n at p. 9; Docket No. 31-19, Decl. of Thomas Gourley.) In its reply, Defendant objects to Mr. Gourley's declaration on the grounds that it offers an expert opinion that Plaintiff failed to timely disclose.[10] (Reply at p. 10.) Defendant further argues that Plaintiff failed to rebut its evidence of Plaintiff's lack of actual injury. The Court agrees that the expert opinion Plaintiff offers is untimely and that Plaintiff has not met its burden to rebut Defendant's evidence that it did not suffer actual injury.

1. *Whether Mr. Gourley's Declaration Contains an Untimely Expert Opinion*

On March 22, 2017, Magistrate Judge Bernard G. Skomal issued a Scheduling Order, which set September 15, 2017 as the deadline for the parties' expert witness designations. (Docket No. 9 ¶ 3.) The parties were ordered to comply with the expert disclosure provisions of Rule 26(a)(2)(A) and (B) of the Federal Rules of Civil Procedure by October 27, 2017.[11] (*Id.* ¶ 4.) The parties were further order to supplement their expert disclosures regarding contradictory or rebuttal evidence by November 10, 2017. (*Id.* ¶ 5.) Defendant objects that Mr. Gourley's declaration sets forth an untimely new expert opinion that was not disclosed in his timely October 2017 expert report. (Reply at p. 10.)

Mr. Gourley's October 2017 expert report indicates he was retained by Plaintiff "to measure damages related in accordance with 15 U.S.C. § 1117 and other applicable laws, and as a consequence of Defendant's deceptive, untrue, and misleading advertising." (Adams Decl. ¶ 9, Ex. H at p. 4.) However, the report itself only "calculate[s] [Defendant's] revenues since inception and assess[es] the adequacy of the information provided to date in order to make such a calculation." (*Id.*) Yet, Plaintiff now presents a

---

[10] The Court construes Defendant's reply argument that "Mr. Gourley's supplemental declaration is a late-disclosed, new expert opinion that should be stricken" as an objection. (Reply at p. 10.)

[11] Unless otherwise stated, the Court's reference to a "Rule" in this section is to the Federal Rules of Civil Procedure.

declaration from Mr. Gourley in support of its opposition to Defendant's summary judgment motion that purports to "demonstrate a direct relationship between Defendant's representations that it applied 'patented formulas and production methods' to its products and a decline in Plaintiff's sales." (Opp'n at p. 9.)

The Court agrees that the present declaration offers a new expert opinion that was not previously disclosed in Mr. Gourley's October 2017 expert report. In other words, when Plaintiff filed Mr. Gourley's declaration to support its opposition on March 12, 2018, the deadline for its disclosure had passed by almost five months, and the deadline for rebuttal disclosures had passed by over four months. Plaintiff's opposition does not provide any justification or explanation for the untimely submission, or argue that its failure to timely disclose the declaration was harmless. Nor has Plaintiff filed an objection or otherwise contradicted the assertion that the declaration was untimely.

Therefore, the Court sustains Defendant's objection.[12] *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

2. *Whether a Genuine Issue of Material Fact Exists that Plaintiff Suffered Actual Injury*

Plaintiff also draws the Court's attention to Defendant's alleged concealment of its relationship with, and failure to produce corresponding sales documentation for, NeoCell, one of Defendant's "major customers." (Opp'n at p. 2, 7.) This is the only other "evidence" Plaintiff offers to establish it suffered actual injury, which amounts to nothing more than an accusation that Defendant intentionally concealed evidence during

---

[12] The Court notes that even if Mr. Gourley's declaration had been timely disclosed, it appears to be of little evidentiary value as it lacks an evidentiary basis and relies almost entirely on Mr. Gourley's own assumptions and conclusions.

discovery. In short, Plaintiff suggests that the Court may infer that it suffered injury because Defendant allegedly concealed the identity and sales documentation of one of its customers. This argument is unpersuasive for three reasons.

First, as Defendant correctly points out, Plaintiff has already raised this issue with Magistrate Judge Skomal, who denied Plaintiff's request to reopen discovery after concluding Plaintiff did not meet its burden to justify additional discovery. (*See* Docket No. 29, *February 13, 2018 Order* at p. 3) ("Plaintiff's stated purpose for requesting this additional discovery is to ascertain whether or not Defendant is indeed withholding discovery from Plaintiff. . . . The Court finds Plaintiff's disbelief of Defendant does not meet this burden, and therefore does not justify reopening discovery.") (citation omitted).

Plaintiff's deadline to object to Magistrate Judge Skomal's Order denying his request to reopen discovery expired on February 28, 2018. *See* Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to."); *see also* 28 U.S.C. § 636(b)(1)(A); CivLR 72.1.b. ("a magistrate judge will hear and determine any pretrial motions, including discovery motions"). In failing to file a timely objection to Magistrate Judge Skomal's Order, Plaintiff waived the issue.

Second, even if the Court considered Plaintiff's accusation as evidence (which it does not), it is not enough to raise a genuine issue of material fact. Unlike Emenee and Vibrant, Plaintiff does not claim NeoCell was a customer it "lost" as a result of Defendant's false statements. Instead, it essentially argues that, but for Defendant's false statements, NeoCell would have purchased collagen products from Plaintiff. But this conclusory argument ignores the fact that Plaintiff admits there is at least one other competitor in the marketplace that NeoCell could have purchased collagen from. (Adams Decl. ¶ 2, Ex. A at p. 11.) Put simply, the mere fact that NeoCell was one of *Defendant's*

customers does not, on its own, establish a genuine issue of material fact that: 1) NeoCell's decision to purchase collagen products from Defendant was based on its false statements, or 2) but for Defendant's false statements, NeoCell would have purchased collagen products from Plaintiff.

Third, Plaintiff's accusation that Defendant withheld sales documentation of its sales to NeoCell does not in any way rebut Defendant's evidence that Emenee's and Vibrant's decision to purchase Defendant's collagen products were *not* based on its claims that its products were "patented." (Adams Decl. ¶¶ 4-5, Exs. C-D.) As discussed above, Emenee and Vibrant are the only customers Plaintiff identified as having "lost" to Defendant. As a result, Plaintiff has failed to present even a scintilla of evidence to establish a genuine issue of material fact that it suffered an actual injury. *Anderson*, 477 U.S. at 252. Therefore, Defendant's motion for summary of Plaintiff's UCL and FAL claims is **GRANTED**.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion for summary judgment of Plaintiff's claims is **GRANTED**.

**IT IS SO ORDERED.**

Dated: July 27, 2018

_____
Hon. Roger T. Benitez
United States District Judge