CERTIFIED NUTRACEUTICALS, INC.,
*a California Corporation*,

Plaintiff,

v.

AVICENNA NUTRACEUTICAL, LLC,
*a Georgia Limited Liability Company*,

Defendant.

Case No.: 3:16-cv-02810-BEN-BGS

**ORDER IMPOSING SANCTIONS**

On July 27, 2018, the Court issued an order to show cause why the Court should not impose monetary sanctions against Plaintiff Certified Nutraceuticals, Inc. ("Plaintiff" or "Certified"), Plaintiff's CEO Ahmad Alkayali, and Plaintiff's counsel for misrepresenting the status of Plaintiff and/or Mr. Alkayali as an assignee of U.S. Patent No. 6,323,319 ("the '319 Patent). (Docket No. 48.) Pursuant to the Court's Order, Plaintiff, Mr. Alkayali, and Plaintiff's counsel filed a joint response. (Docket No. 49.) Defendant Avicenna Nutraceutical, LLC ("Avicenna") also filed its optional response. (Docket No. 54.) On August 24, 2018, the Court held a hearing where it heard arguments regarding its *July 27, 2018 Order to Show Cause*. (Docket No. 55.) Present at the hearing were counsel for Avicenna and Robert Tauler, Plaintiff's counsel of record, who appeared on behalf of Plaintiff, Mr. Alkayali, and himself and his law firm.

As will be explained in further detail below, the Court finds Plaintiff, Mr. Alkayali, and Plaintiff's counsel each violated Federal Rule of Civil Procedure 11(b). Sanctions in this case are therefore warranted.

**RELEVANT FACTUAL BACKGROUND & PROCEDURAL HISTORY**

On November 15, 2016, Plaintiff filed a complaint against Avicenna for false advertising and unlawful business practices under the Lanham Act and California state-law. (Docket No. 1, "Compl.") Mr. Tauler of the law firm Tauler Smith, LLP signed the Complaint. The gravamen of the complaint is that Avicenna falsely advertised its collagen products as "patented" or processed using "patented formulas and production methods" because Avicenna never held any relevant patents. The Complaint further alleged the following:

> 19. In fact, Ahmad Alkayali, CEO of Certified, is listed as the assignee and inventor in connection with U.S. Patent No. 6,323,319[.]

> 28. For example, Ahmad Alkayali is listed as the assignee and inventor in connection with U.S. Patent No. 6,323,319[.]

(Compl. ¶¶ 19, 28.) But at the time the Complaint was filed, Mr. Alkayali was not an assignee of the '319 Patent.[1] In other words, this allegation was not true.

On January 2, 2017, Avicenna filed its answer, wherein it asserted the following as grounds for its affirmative defense of unclean hands:

> Plaintiff's claims, and each of them, are barred, entirely or in part, by the Doctrine of Unclean Hands, in that *inter alia*,

---

[1] The Court takes judicial notice of the '319 Patent's assignment history, which is publicly available on the United States Patent and Trademarks Office's ("USPTO's") website. *See* USPTO Website, *Patent Assignment Search for Patent No. 6,323,319*, *available at* https://assignment.uspto.gov/patent/index.html#/patent/search (last visited September 12, 2018); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("The Court may take judicial notice of "matters of public record.") (quoting *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir. 1986)).

contrary to Plaintiff's representations, it is not actually the "assignee" of any U.S. patents. Instead, it is the *assignor* of several patents that it *no longer owns*, including U.S. patents with Serial Nos. 6,323,319, 6,323,327 and 8,344,106.

(Docket No. 5, Answer at p. 9) (emphasis in original.)

The case proceeded and on February 8, 2018, Avicenna moved for summary judgment, relying in part on the aforementioned affirmative defense of unclean hands. (Docket No. 28.) Specifically, Avicenna argued that Plaintiff was barred from recovery under the unclean hands doctrine because it had engaged in the same conduct for which it sought relief. To support its affirmative defense, Avicenna presented evidence that in 2011 Plaintiff advertised one of its products, KollaGen II-xs ("KollaGen"), as patented before the patent covering KollaGen was issued in 2013.

On March 12, 2018, Plaintiff filed its opposition, which relied in part on a supporting declaration from Mr. Alkayali ("MSJ declaration"). Mr. Tauler signed the opposition and Mr. Alkayali signed his MSJ declaration. The opposition argued against application of the unclean hands doctrine on the following purportedly factual grounds:

- "Defendant argues that the doctrine of unclean hands precludes Plaintiff from any recovery because Plaintiff lied in 2011 when it described in passing its avian collagen product, KollaGen II-xs as patented in two press releases. However, in 2011, the KollaGen II-xs product was covered by the Patent No. 6,323,319." (Docket No. 31 at p. 3.)

- "Plaintiff's CEO Ahmad Alkayali, is an and [sic] assignee of U.S. Patent No. 6,323,319[.] . . . The '319 Patent applied to Plaintiff's avian collagen product, KollaGen II-xs in 2001 [sic]." (*Id.* at p. 4.)

- "[I]n 2011, the KollaGen product was covered by the '319 Patent, issued on or about November 11, 2001." (*Id.* at p. 10.)

- "[I]n 2011, the '319 Patent applied to KollaGen II-xs. . . . Indeed, Plaintiff identified its CEO as the assignee of the '319 Patent in its Complaint[.]" (*Id.* at p. 11.)

The factual basis for these representations was provided by Mr. Alkayali's MSJ declaration, wherein Mr. Alkayali stated he is "the assignee of Patent No. 6,323,319" and that "[t]he '319 Patent applied to KollaGen II-xs in 2011." (Docket No. 31-21.) As with the Complaint, at the time the opposition and Mr. Alkayali's MSJ declaration were filed, Mr. Alkayali was not an assignee of the '319 Patent.[2] As a result, the representations in the opposition and Mr. Alkayali's MSJ declaration were untrue.

Avicenna filed its reply on March 19, 2018, and attached a copy of a May 3, 2002 Order from the Orange County Superior Court[3] granting a permanent injunction against Mr. Alkayali. In relevant part, the injunction permanently enjoined Mr. Alkayali, his "officers, agents, employees, representative, and all persons acting in concert or participating with [him] . . . from engaging in, committing, or performing, directly or indirectly, by any means whatsoever, any of the following acts":

> A.    Transferring, assigning, licensing, hypothecating, enforcing, selling, granting, encumbering, or in any way changing the legal or equitable title to the patent issued by the United States Patent Office as US Patent # 6,025,327, or any continuation thereof (collectively referred to as "327 Patent").
>
> B.    Manufacturing, distributing, offering for sale, or selling any of the product or goods covered under the 327 Patent." . . .
>
> D.    From interfering, directly or indirectly, with BioCell's manufacture, distribution, offer for sale, selling or licensing the 327 Patent or any product or good covered under the 327 Patent.

(Docket No. 33-4, Supp. Decl. of Brian Berggren ("Berggren Decl.") ¶ 4, Ex. O.)

On July 27, 2018, the Court granted Avicenna's motion for summary judgment. (Docket No. 47.) Specifically, the Court found Plaintiff barred from recovery for its

---

[2] *See* Note 1, *supra*.

[3] *BioCell Tech. v. Alkayali*, Orange County Superior Court Case No. 00CC06708, *May 3, 2002 Judgment*, *aff'd*, 2004 WL 114699, at *1 (Cal. Ct. App. Jan. 26, 2004).

4

Lanham Act claim because it had unclean hands.[4]  To support this finding, the Court took judicial notice that the '319 Patent is a continuation of the '327 Patent (which meant the permanent injunction for the '327 Patent extended equally to the '319 Patent), and that "[s]ince the initial assignment in 1997, neither Plaintiff nor Mr. Alkayali appears to have held any interest or license for the '319 Patent."  (*Id.* at pp. 6 n.4, 7 n.6.)

On the same day, the Court issued the instant order to show cause why monetary sanctions should not be imposed against Plaintiff, Mr. Alkayali, and Plaintiff's counsel for their misrepresentations of Plaintiff and/or Mr. Alkayali as an assignee of the '319 Patent.  (Docket No. 48.)

## DISCUSSION

Plaintiff, Mr. Alkayali, and Plaintiff's counsel's joint response (Docket No. 49, "Joint Response") to the Court's *July 27, 2018 Order to Show Cause* only discusses why the Court should not impose sanctions under Federal Rule of Civil Procedure 11. However, the Ninth Circuit recognizes three "primary sources of authority" that "enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power."  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

The Court has considered the relevant portions of the record, the parties' respective briefings and exhibits in response to its *July 27, 2018 Order to Show Cause*, as well as the oral arguments raised at the August 24, 2018 Hearing.  Although the Court finds each source of authority provides a basis for sanctions, Rule 11 appears to be the most appropriate under these circumstances.  *See Matter of Yagman*, 796 F.2d 1165, 1169 (9th Cir. 1986).

---

[4] The Court granted Avicenna's motion for summary judgment of Plaintiff's state-law claims on other grounds.  (*See* Docket No. 47 at pp. 9-15.)

# I. Sanctions Under Federal Rule of Civil Procedure 11

"District courts have broad discretion to sanction a party or attorney under Rule 11." *DeMarco v. Depotech Corp.*, 131 F. Supp. 2d 1185, 1186 (S.D. Cal. 2001) (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 385 (1990); *Barber v. Miller,* 146 F.3d 707, 709 (9th Cir. 1998)). "Federal Rule of Civil Procedure 11 provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cnty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (citing *Simpson v. Lear Astronics Corp.,* 77 F.3d 1170 (9th Cir. 1996)). "Frivolous filings are 'those that are both baseless and made without a reasonable and competent inquiry.'" *Id.* (quoting *Buster v. Greisen,* 104 F.3d 1186, 1190 (9th Cir. 1997)). "The signer's subjective good or bad faith is irrelevant to the Rule 11 analysis, rather an objective reasonableness standard applies." *DeMarco*, 131 F. Supp. 2d at 1186 (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.,* 498 U.S. 498, 548 (1991); *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 434 (9th Cir. 1996)).

Rule 11 sanctions may be imposed even when only a portion, not the entirety, of a pleading is frivolous. *Altmann v. Homestead Mortg. Income Fund*, 887 F. Supp. 2d 939, 955 (E.D. Cal. 2012) (citing *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1364-65 (9th Cir. 1990) (en banc)). If, after notice and a reasonable opportunity to respond, a court determines that Rule 11(b) has been violated, a district court may impose Rule 11 sanctions *sua sponte*. Fed. R. Civ. P. 11(c); *see also Foster v. Wilson*, 504 F.3d 1046, 1053 (9th Cir. 2007). When a district court imposes *sua sponte* Rule 11 sanctions, it is limited to fines payable to the court or "directives of a nonmonetary nature." Fed. R. Civ. P. 11(c)(4).

# II. Basis for Sanctions Against Plaintiff & Mr. Alkayali

In a single paragraph, the Joint Response explains:

> With respect to the assignment of the '319 Patent, Five
> Continent Enterprises, Inc. ("FCEI") is listed as the assignee of

6

> the '319 Patent according to the USPTO. . . . Mr. Alkayali was
> the sole owner of FCEI at the time the patent was assigned. . . .
> Five Continent Enterprises, Inc. was dissolved in 2003. . . The
> '319 Patent is a "continuation" of U.S. Patent No. 6,025,327
> (the '327 Patent" [sic]) and for this reason, Mr. Alkayali never
> marketed the '319 Patent, but believed he was still the assignee
> after the dissolution of FCEI. . . . Mr. Alkayali has continued to
> do business as Five Continent Enterprises until the present day
> and has maintained a federal tax id for FCEI since its inception.

(Joint Response at p. 3.)

The Joint Response relies entirely on Mr. Alkayali's supporting declaration ("Response declaration"), which adds that "[t]o the best of [his] recollection FCEI was assigned the ['319] Patent on in [sic] early 2002" and that he "d[oes] not have records in [his] possession regarding the assignment." (Docket No. 49-2.) The Joint Response attached "a true and correct copy of the USPTO printout" for the '319 Patent (Docket No. 49-3), to support this explanation. The same document was also attached to Plaintiff's Complaint as an exhibit to Plaintiff's opposition to Avicenna's motion for summary judgment. (*See* Docket Nos. 1-2, 31-14.)

The Court acknowledges that the attached document indicates "Five Continent Enterprise, Inc." as the "Assignee." (*Id.* at p. 1.) However, the Court discredits Plaintiff and Mr. Alkayali's explanation in its entirety for several reasons. First, Mr. Alkayali himself assigned the '319 Patent to non-party BioCell Technology, LLC ("BioCell") on December 2, 1997. *See* Note 1, *supra*. On May 15, 2000, BioCell assigned the '319 Patent to FCEI, the company in which Mr. Alkayali asserts he is the "sole owner." *Id.* FCEI then assigned the '319 Patent back to BioCell on <u>October 3, 2001</u>. *Id.*[5] But Mr. Alkayali admits in his Response declaration that he does not have records in his possession regarding the assignment of the '319 Patent to FCEI. Based on these facts,

---

[5] The Court notes that on December 21, 2004, BioCell assigned the '319 Patent to Intellipi, LLC, who has maintained the assignment ever since. *See* Note 1, *supra*.

the Court concludes Mr. Alkayali did not conduct a reasonable and competent inquiry prior to representing that he was an assignee of the '319 Patent and that the '319 Patent applied to Plaintiff's products.[6] And, under agency principles, Mr. Alkayali's failure to conduct a reasonable and competent inquiry is attributable to Plaintiff.

Second, even if Mr. Alkayali somehow "forgot" his and FCEI's roles in the '319 Patent's assignment history, he admits in his Response declaration that he knew he could not "market" the '319 Patent because it was a continuation of the '327 Patent. Importantly, the Orange County Superior Court's May 3, 2002 permanent injunction specifically enjoined Mr. Alkayali *and* his "officers, agents, employees, representative, and all persons acting in concert or participating with [him]" (*i.e.,* Plaintiff), from "engaging in, committing, or performing, directly or indirectly, by any means whatsoever" the manufacture, distribution, offering for sale, or selling any of the product or goods covered by the '327 Patent, or any continuations thereof. (Berggren Decl. ¶ 4, Ex. O.) In other words, Mr. Alkayali knew that the permanent injunction was in effect at the time Plaintiff's Complaint and his MSJ and Response declarations were signed. These facts further demonstrate Mr. Alkayali's (and therefore Plaintiff's) failure to conduct a reasonable and competent inquiry.[7]

Third, as discussed during the August 24, 2018 Hearing, Plaintiff filed a similar case in this District while the instant action was pending.[8] In *Nutrawise*, one of the defendants filed a motion to dismiss for lack of standing due to the fact that neither

---

[6] Indeed, although subjective knowledge is not necessary to the Court's analysis of Rule 11 sanctions, notwithstanding the USPTO printout Mr. Alkayali relies on, the Court finds Mr. Alkayali either knew or was reckless in not knowing that neither he nor FCEI ceased held any assignment interest in the '319 Patent since October 3, 2001.

[7] The Court also finds Mr. Alkayali knew or was reckless in not knowing that the '319 Patent could not have lawfully applied to Plaintiff's product when this argument was raised in Plaintiff's opposition and Mr. Alkayali's MSJ declaration.

[8] *Certified Nutraceuticals Inc. v. Nutrawise, et al. ("Nutrawise")*, 3:17-cv-01403-H-AGS, Docket No. 1, Compl. (July 11, 2017).

Plaintiff nor Mr. Alkayali held any rights to the '319 Patent.[9]  Notably, that motion

attached a printout of the results of a search from the USPTO's patent assignment

database of the '319 Patent's assignment history, which established the falsity of Plaintiff

and Mr. Alkayali's representations that Mr. Alkayali (or Mr. Alkayali as FCEI's sole

owner) was the assignee of the '319 Patent.  The motion also cited the Orange County

Superior Court's May 3, 2002 permanent injunction against Mr. Alkayali as a further

basis for dismissal.[10]  Shortly thereafter, on September 7, 2017, Plaintiff voluntarily

dismissed the *Nutrawise* case.[11]  This also evidences Plaintiff and Mr. Alkayali's failure

to conduct a reasonable and competent inquiry.[12]

For all of these reasons, the Court finds Plaintiff and Mr. Alkayali's

representations in the Complaint, opposition to Avicenna's motion for summary

judgment, and Mr. Alkayali's MSJ and Response declarations that Mr. Alkayali was as

assignee of the '319 Patent were frivolous in violation of Rules 11(b)(3) and 11(b)(4).

Accordingly, the Court sanctions Plaintiff and Mr. Alkayali, jointly and severally, in the

amount of $5,000[13] to be paid as a penalty to the Court's Library Fund.

## III.  Basis for Sanctions Against Plaintiff's Counsel

Throughout this litigation, Plaintiff has been represented by Robert Tauler of the

law firm Tauler Smith, LLP.  As to why sanctions should not be imposed against

Plaintiff's counsel, the Joint Response again offers a single paragraph to explain:

> With respect to counsel's investigation of the status of the '319
> Patent, counsel has in its possession privileged documents that

---

[9] *See Nutrawise*, 3:17-cv-01403-H-AGS, Docket No. 18.

[10] *See Nutrawise*, 3:17-cv-01403-H-AGS, Docket No. 18-2.

[11] *See Nutrawise*, 3:17-cv-01403-H-AGS, Docket No. 21.

[12] Notably, the *Nutrawise* case was voluntarily dismissed four months before Plaintiff filed its opposition and Mr. Alkayali's MSJ declaration.  (*See* Docket Nos. 32, 31-21.)

[13] At the August 24, 2018 hearing, Mr. Tauler represented that he and Plaintiff had recently obtained a jury verdict of $10 million.  Thus, Plaintiff, Mr. Alkayali (as Plaintiff's CEO), and Mr. Tauler have all demonstrated an ability to pay the penalty.

> demonstrate due diligence before this matter was initiated and
> continuing throughout the proceedings that the facts provided to
> the Court were accurate, specifically as they pertain to the
> status of the '319 Patent. . . .  Counsel offers to provide these
> communications to the Court for *in camera* review, should the
> Court choose to investigate this matter further.

(Joint Response at pp. 3-4.)

The Joint Response is vague.  It does not explain what steps, if any, Mr. Tauler took to investigate the Complaint's factual allegation that Mr. Alkayali was the assignee of the '319 Patent.  Nor does it explain what steps, if any, Mr. Tauler took to investigate the Mr. Alkayali's representations that he was an assignee of the '319 Patent and that the '319 Patent applied to Plaintiff's products, which (as detailed above) formed the basis of one of Plaintiff's arguments in the opposition to Avicenna's motion for summary judgment.  Mr. Tauler's oral arguments at the Court's August 24, 2018 hearing did little to provide clarification.

During the hearing, Mr. Tauler conceded that he had a duty to investigate to ensure he pursued Plaintiff's action in good faith both at the time it was filed and throughout the course of its litigation.  To demonstrate his compliance with Rule 11, Mr. Tauler indicated he had initially searched the USPTO patent database for the '319 Patent prior to filing the Complaint, and attached the results of said search to the Complaint.  However, Mr. Tauler admitted that at the time the Complaint was filed, he was aware that FCEI (*i.e.,* not Mr. Alkayali) was listed as the assignee of the '319 Patent.  Remarkably, he further admitted that he did not conduct any further search because Mr. Alkayali "told [him] that [Mr. Alkayali] was the assignee" and because Mr. Tauler "knew that [Mr. Alkayali] was the owner of [FCEI] at the time" he "had no reason to suspect anything different."

Inasmuch as Mr. Tauler argued during the hearing that Mr. Alkayali's status as an assignee "was not central to the complaint" and therefore "[he] didn't have a duty to investigate any further in [his] belief at the time," this argument is not persuasive.  Even

if the Court found this inquiry sufficient (which it does not), this argument does not excuse his apparent failure to conduct a reasonable and competent inquiry in his responses to Avicenna's motion for summary judgment or the Court's *July 27, 2018 Order to Show Cause*.

Mr. Tauler was constructively on notice of the potential falsity of Mr. Alkayali's status as the assignee of the '319 Patent when Avicenna filed its answer and raised the unclean hands affirmative defense detailed above. At the hearing, Mr. Tauler effectively conceded he did not conduct any such inquiry at that time. Rather, he only undertook an investigation after Avicenna raised the unclean hands affirmative defense in its motion for summary judgment. Mr. Tauler stated: "I'm not a patent lawyer. We did our best once they raised that defense to investigate those facts, and based on my communications with my client, I was satisfied that he could put in his declaration that he was the assignee of the '319 Patent." Based on this statement, and Mr. Tauler's failure to identify any other type of investigation, the Court concludes that the only meaningful inquiry Mr. Tauler conducted regarding Mr. Alkayali's status as an assignee of the '319 Patent, and whether the '319 Patent covered Plaintiff's product, *was to consult with his client*. Such an investigation was not objectively reasonable or competent under these circumstances.

More importantly, as a result of Mr. Tauler's failure to conduct a reasonable and competent inquiry, he advanced demonstrably false representations and arguments. Avicenna's reply aptly exposed the falsity of the representations by attaching the assignment history of the '319 Patent from the USPTO's "Patent Assignment Search website" and the Orange County Superior Court's May 3, 2002 Order granting the permanent injunction against Mr. Alkayali. Yet at no point did Mr. Tauler withdraw the misrepresentations from the opposition or Mr. Alkayali's MSJ declaration, or otherwise file an explanation for presenting baseless claims.

More remarkably still, it appears evident that Mr. Tauler did not conduct any further investigation of the misrepresentations in preparing the Joint Response. The Court's Order granting Avicenna's motion for summary judgment stated the following:

The Court takes judicial notice that the '319 Patent was issued on November 27, 2001, and that Ahmad Alkayali, Plaintiff's founder and current Chief Executive Officer (*see* Alkayali Decl. ¶ 1), assigned his interest in the '319 Patent while it was pending on December 2, 1997. *See* USPTO Website, *Patent Assignment Search for Patent No. 6,323,319*, *available at* https://assignment.uspto.gov/patent/index.html#/patent/search (last visited July 3, 2018).

(Docket No. 47 at p. 6 n.4.) Had Mr. Tauler conducted a minimal inquiry of searching the USPTO's publicly accessible database, which the Court cited (and recites in Note 1, *supra*), he would have learned that FCEI's assignment interest in the '319 Patent ended on October 3, 2001. Mr. Tauler cannot evade Rule 11 sanctions by willfully ignoring unfavorable facts. Had Mr. Tauler conducted this minimal inquiry, he could have advised Plaintiff and Mr. Alkayali against making the same misrepresentations in the Joint Response and Mr. Alkayali's Response declaration.

It is no wonder that during the hearing, the following exchange occurred between the Court and Mr. Tauler:

> The Court: In connection with this case your client did file a declaration alleging he owned the patent, right?
>
> Mr. Tauler: That he was the assignee of the '319 Patent, correct.
>
> The Court: He's not.
>
> Mr. Tauler: I don't know either way.

Mr. Tauler's lack of knowledge is a direct result of his failure to conduct a *reasonable and competent* inquiry. During the hearing, Mr. Tauler stated: "I'm not aware that assignments have to be registered with the USPTO. I don't have familiarity with that subject matter." But this is also not a valid excuse. According to California's Rules of Professional Conduct, "[a] member shall not intentionally, recklessly, or repeatedly fail to perform legal services with competence." Cal. Rules Prof. Conduct 3-110. For purposes

of Rule 3-110, "competence" in any legal service applies to an attorney's "1) diligence, 2) learning and skill, and 3) mental, emotional, and physical ability reasonably necessary for the performance of such service." *Id.* Importantly, "[i]f a member does not have sufficient learning and skill when the legal service is undertaken, the member may nonetheless perform such services" *provided* he or she: 1) acquires sufficient learning and skill before performance is required, or 2) associates with, or "where appropriate, professionally consult[s] another lawyer reasonably believed to be competent." *Id.* At the hearing, Mr. Tauler denied acquiring the former but did not discuss the latter. Nor did Mr. Tauler indicate that he had associated with or consulted with another competent lawyer.

Finally, during the hearing Mr. Tauler lamented that: "If I've learned anything from this, it would be to not have included that in the complaint because it was not germane to the cause of action. It was a false advertising complaint." This argument misses the point. Even if the Complaint did not include the representation that Mr. Alkayali was an assignee of the '319 Patent, this would not have prevented Avicenna from raising the unclean hands affirmative defense it raised in its answer and motion for summary judgment. In short, regardless of what type of claim is filed, an attorney has a duty to conduct a reasonable and competent inquiry of all claims *and defenses* that arise in the provision of his or her legal services.

For all of these reasons, the Court finds Mr. Tauler failed to conduct a reasonable and competent inquiry into Mr. Alkayali's status as an assignee of the '319 Patent, which resulted in the frivolous representations in Plaintiff's Complaint, Plaintiff's opposition to the motion for summary judgment, and Mr. Alkayali's MSJ and Response declarations, in violation of Rules 11(b)(2), 11(b)(3), and 11(b)(4). Accordingly, the Court jointly sanctions Mr. Tauler and his law firm, Tauler Smith, LLP in the amount of $2,500[14] to be

---

[14] *See* Note 13, *supra*.

paid as a penalty to the Court's Library Fund. *See* Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.").

## CONCLUSION

For the foregoing reasons, Plaintiff and Mr. Alkayali are jointly and severally sanctioned in the amount of $5,000 to be paid to the Court's Library Fund. Mr. Tauler and Tauler Smith, LLP are jointly sanctioned in the amount of $2,500 to be paid to the Court's Library Fund. The sanctions are to be paid by **October 31, 2018**. Counsel for Plaintiff shall file a notice with the Court that the sanctions have been paid within **three (3) days** of payment.

**IT IS SO ORDERED.**

Dated: September 14, 2018

Hon. Roger T. Benitez
United States District Judge