UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTIFIED NUTRACEUTICALS, INC., *a California Corporation*,<br><br>                                Plaintiff,<br><br>v.<br><br>AVICENNA NUTRACEUTICAL, LLC, *a Georgia Limited Liability Company*,<br><br>                               Defendant. | Case No.: 3:16-cv-02810-BEN-BGS<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES**<br>**[Doc. 50]** |

Defendant Avicenna Nutraceutical, LLC moves the Court to award $168,835 in attorneys' fees against Plaintiff Certified Nutraceuticals, Inc. pursuant to the Lanham Act, 15 U.S.C. § 1117(a). The motion, Doc. 50, is **GRANTED**.

## I.     BACKGROUND[1]

Plaintiff Certified Nutraceuticals, Inc. ("Certified") brings this false advertising and unfair business practice action against Defendant Avicenna Nutraceutical, LLC

---

[1] Avicenna requests that the Court take judicial notice of several court filings. Doc. 51. The request is granted. *See Wheeler v. Premiere Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1111 (S.D. Cal. 2015) (taking judicial notice of an opinion from another case because court opinions are undisputed "matters of public record" subject to judicial notice).

1

("Avicenna") for claims under the Lanham Act and California state law. Certified alleges Avicenna falsely advertised its collagen products as both "patented" and processed using "patented formulas and production methods" because Avicenna never held any relevant patents. Certified further alleges that, as a competitor also engaged in the sale of collagen products, it suffered damages in the form of diversion of business and loss of goodwill.

On July 30, 2018, the Court granted Avicenna's Motion for Summary Judgment on all three of Certified's claims. *See* Doc. 47. As to Certified's Lanham Act claim, the Court granted summary judgment for Avicenna because Certified brought its claims with unclean hands by engaging in the same improper conduct for which it faulted Avicenna – publishing false statements about a product being "patented" without a patent. As to Certified's two remaining state law claims, the Court granted summary judgment for Avicenna because Certified failed to establish it suffered an actual injury as a result of Avicenna's false statements.

The parties' summary judgment briefing brought to light filings by Certified that seemingly misrepresented the status of Patent No. 6,323,319 with respect to Certified and Certified's CEO, Ahman Alkayali. On September 14, 2018, following an Order to Show Cause and oral argument, the Court imposed sanctions against Certified, Mr. Alkayali, and Certified's counsel under Federal Rule of Civil Procedure 11(b). *See* Doc. 61. The Court found Certified and Mr. Alkayali's representations about Patent '319 within the Complaint, summary judgment briefing, and Mr. Alkaylai's declarations were frivolous in violation of Fed. R. Civ. P. 11(b)(3) and (4). Doc. 61, p. 9. As a result, the Court jointly and severally sanctioned Certified and Mr. Alkayali in the amount of $5,000, as well as Plaintiff's counsel of record and Tauler Smith, LLP in the amount of $2,500 for failure to conduct a reasonable and competent inquiry. *Id.*

## II. DISCUSSION

Avicenna moves for an award of $168,835 in attorneys' fees against Certified under the Lanham Act, 15 U.S.C. § 1117(a). Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing

party." 15 U.S.C. § 1117(a). Accordingly, the Court first considers whether the present case is "exceptional."

### A. "Exceptional" Case Standard

A district court analyzing a request for fees under the Lanham Act should look to the "totality of the circumstances" to determine if the case is exceptional.[2] *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180 (9th Cir. 2016). In its analysis, the court should "exercis[e] equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* [*LLC v. ICON Health & Fitness*, 572 U.S. 545 (2014)] and *Fogerty* [*v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)], and us[e] a preponderance of the evidence standard." *Id.* at 1181. Specifically, the court should consider "factors, including frivolousness, motivation, objective reasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1181 (citing *Octane Fitness*, 572 U.S. at 558 n.6). Here, Avicenna argues the instant case is "exceptional" because (1) Certified's claims were frivolous and substantively unreasonable, as evidenced by the Court's summary judgment and sanctions orders; (2) Certified's counsel litigated the case in an objectively unreasonable manner; and (3) a fee award is necessary to deter Certified from continuing to abuse the judicial system. The Court considers each factor in turn.

#### 1. Frivolousness

Avicenna contends Certified's claims were frivolous and unreasonable because prior to filing its lawsuit, Certified knew or should have known that its unclean hands barred its Lanham Act claim and that it did not suffer any injury, barring its two state law claims. The Court agrees.

---

[2] Because the fee-shifting provisions in the Lanham Act and Patent Act are "parallel and identical," courts interpret them in the same way. *See SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 117, 1180 (9th Cir. 2016).

3

Certified filed its Lanham Act claim against Avicenna for Avicenna's publication of false statements about its collagen product being "patented" before the patent issued. However, as the Court found in its summary judgment order, Certified engaged in identical misconduct – misconduct about which it knew or should have known at the time of filing its Complaint and summary judgment briefing. Specifically, in press releases from 2011, Certified described its own collagen product as "patented," despite the fact that Certified did not have a valid patent for the product at the time. When Avicenna demonstrated Certified's alleged '106 Patent was not issued until *after* Certified's press releases, Certified claimed instead that its press releases referred to the '319 Patent. Previously in 2002, however, the Orange County Superior Court enjoined Certified from asserting the '319 Patent. Doc. 47, p. 6-7 (citing *BioCell Tech. v. Alkayali*, 2004 WL 114699, at *1 (Cal. Ct. App. Jan. 26, 2004)).

In light of the parties' evidence on summary judgment, the Court held that either of two scenarios occurred at the time Certified made its 2011 press release statements about its collagen product: (1) the product was only covered by the '106 Patent, or (2) prior to issuance of the '106 Patent, the collagen product was covered by the '319 patent. Doc. 47, p. 7. Regardless, the Court held, "[i]n either scenario, it appears [Certified] knowingly made false statements regarding the patented nature of [its collagen product] – either because it knew the '106 Patent had not yet been issued, or because it knew it had no right to manufacture, distribute, offer for sale, or sell any goods under the '319 Patent." Doc. 47, p. 7-8.

As to Certified's claims under California's unfair competition law and false advertising law, Certified's basis for filing those claims was equally frivolous. As the Court observed in its summary judgment order, Certified could only identify two customers it "lost" as a result of Avicenna's false statements, and those two customers' decisions to purchase collagen products from Avicenna instead of Certified were not even based on Avicenna's false statements; they were based on the customers' beliefs in Avicenna's product's superior quality and consistency. *See* Doc. 47, p. 11. Again, Certified knew or

should have known that it had not suffered any actual injury from Avicenna's misconduct. For the previous reasons, Avicenna has shown by a preponderance of the evidence that Certified's lawsuit was frivolous and substantively unreasonable. *See also generally* Doc. 61 (discussing the Court's basis for imposing sanctions against Certified).

Certified argues its case was not frivolous for several reasons. Each of those reasons lacks merit. First, Certified contends that winning summary judgment "in itself" does not show frivolousness. Contrary to Certified's characterization, however, Avicenna has argued more than its mere technical win. Indeed, the Court found on summary judgment that Avicenna demonstrated with clear and convincing evidence Certified's wrongfulness, willfulness, and bad faith in engaging in inequitable conduct. Doc. 47, p. 8. As discussed above, Avicenna has shown by a preponderance of the evidence that Certified knew or should have known why its claims lacked any merit. Moreover, other courts have held that a plaintiff's prosecution of an objectively unreasonable claim justifies attorneys' fees under the Lanham Act. *See, e.g., Dropbox Inc. v. Thru Inc.*, 2017 WL 914273, *1-2 (N.D. Cal. Mar. 8, 2017) (awarding fees under the Lanham Act by finding, in part, that the claims were "substantively meritless" because the "overwhelming evidence" showed that the claims were barred by laches as a matter of law); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 2015 WL 12733442 (C.D. Cal. Mar. 10, 2015) (finding case was "exceptional" in part because losing party's claims were barred by laches). Certified's cases to the contrary not only apply an outdated standard for awarding fees, but also recognize, even under the older standard, that fees can be awarded under the Lanham Act when "there is no reasonable basis to believe in the factual allegations underlying the claim." *See* Doc. 56, p. 3-4 (citing cases). Here, that is precisely the case.

Alternatively, Certified contends that, even if the Court finds its case to be "exceptional," the Court should not award *any* fees to Avicenna because "[w]ere it not for [Certified]'s lawsuit, there should be no doubt that [Avicenna] would have continued to falsely claim that it 'applies its patented formulas and production methods to process US chicken sternum' to this day." [Doc. 56, p. 8]. Certified overstates the impact of its lawsuit.

5

Avicenna has shown by a preponderance of the evidence that Avicenna's misrepresentation of its product as "patented" happened only twice, and Avicenna corrected both instances *prior to Certified filing its lawsuit*. *See* Doc. 58-1 and associated exhibits. Accordingly, the Court will not exercise its discretion to decline a fee award on that unpersuasive ground.

### 2. Objective Reasonableness

Avicenna next contends that Certified litigated its case in an objectively unreasonable manner, further demonstrating Certified's case is "exceptional." Specifically, Avicenna points to Certified's three claims, which lacked any basis in fact or applicable law, as well as Certified's discovery practices. Setting aside the parties' disputes over discovery,[3] the Court is persuaded that Certified litigated its case in an objectively unreasonable manner for the reasons discussed in its Order Imposing Sanctions. *See* Doc. 61, p. 7-8. In that Order, the Court found Mr. Alkayali failed to conduct a reasonable and competent inquiry prior to representing *to the Court* that he was an assignee of the '319 Patent and that the '319 Patent applied to Certified's products. In other words, Mr. Aklayali litigated his case in bad faith because he knew or should have known the permanent injunction was in place at the time he filed his Complaint, his Summary Judgment briefing, and his signed supporting declarations. Doc. 61, p. 8.

Moreover, as discussed during the August 24, 2018 Hearing, Certified's decision to file a similar case in this District ("the *Nutrawise* lawsuit") while the present case was pending additionally demonstrates that Certified litigated its case in an objectively

---

[3] To the extent Certified relies on Magistrate Judge Skomal's Order, Doc. 20, to show that Avicenna improperly withheld documents during discovery, the Court rejects Certified's contention as another misrepresentation to the Court. *See* Docs. 56, p. 5-6; 20; and 29. Judge Skomal's Order did not make any such finding. *See* Doc. 20. Rather, the Order merely reopened fact discovery as to Request for Production Numbers 4 and 6 to which Avicenna objected and Plaintiff had not moved to compel. Indeed, in Certified's second motion to reopen discovery based on its belief that Avicenna was withholding documents, Judge Skomal expressly ruled that Certified failed to show Avicenna withheld any documents. Doc. 29, p. 3.

unreasonable manner. *See Certified Nutraceuticals Inc. v. Nutrawise, et al.*, 3:17-cv-01403-H-AGS, Doc.1 (July 11, 2017). In the *Nutrawise* lawsuit, a defendant moved to dismiss for lack of standing, arguing that neither Certified nor Mr. Alkayali held any rights to the '319 Patent.[4] The motion to dismiss included a document reflecting the results of a search from the USPTO's patent assignment database for the '319 Patent's assignment history, which established the falsity of Certified and Mr. Alkayali's representations that Mr. Alkayali was the assignee of the '319 Patent. As a further basis for the dismissal, the motion also cited the Orange County Superior Court's May 3, 2002 permanent injunction against Mr. Alkayali.[5] Shortly thereafter, four months before Certified filed its opposition and Mr. Alkayali's declaration in the instant action, Certified voluntarily dismissed the *Nutrawise* lawsuit. *See* Docs. 32, 31-21. Thus, yet again, Certified knew or should have known that it could not assert the '319 patent. For the previous reasons, including Certified and Mr. Alkayali's failure to conduct a reasonable and competent inquiry, the Court is persuaded that Certified litigated its case in an objectively unreasonable manner.

### 3. Deterrence

When evaluating whether a case is "exceptional" and warranting of attorneys' fees, deterrence of frivolous lawsuits is another factor the Court may consider. *See SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016). Here, Avicenna contends deterrence is a particularly compelling factor because of Certified's "long history of advancing frivolous theories and filing frivolous claims against competitors." Doc. 50-1, p. 20. In support, Avicenna identifies three examples. First, in April 2018, the California Court of Appeal affirmed a sanctions award of $34,000 against Mr. Alkayali for advancing frivolous arguments in a lawsuit against NeoCell and its former owners. *See* Doc. 51-1. Second, as already discussed, Certified filed the *Nutrawise* lawsuit in this District against nearly a dozen competitors, again alleging infringement of the '319

---

[4] *See Nutrawise*, 3:17-cv-01403-H-AGS, Doc. 18.
[5] *See Nutrawise*, 3:17-cv-01403-H-AGS, Doc.18-2.

Patent, despite the fact that Certified was previously enjoined from asserting that patent. *See Certified Nutraceuticals, Inc. v. Nutrawise, Inc. et al.*, U.S. District Court for the Southern District of California, Case No. 17cv1403 (July 11, 2017). Third, on April 17, 2018, Certified filed a second lawsuit alleging similar false advertising claims against Avicenna, but Certified has yet to serve Avicenna with the lawsuit. *See* Doc 51-2. Avicenna contends the timing of Certified's filing only two months after Avicenna moved for summary judgment, as well as Certified's failure to serve Avicenna with the Complaint, shows Certified's lawsuit was an obvious attempt to gain settlement leverage.

Certified responds that the Court cannot consider its litigation history, sanctions, violation of an injunction, or reliance on perjured testimony in determining whether attorneys' fees are appropriate. Certified, however, fails to cite any authority for its position.[6] Regardless, the Court exercises its "equitable discretion" and finds that Certified's litigation history *is* relevant – under both the totality of the circumstances test outlined in *Octane Fitness* and the deterrence factor. *See SunEarth, Inc.*, 839 F.3d at 1181. For example, despite being exposed as fraudulently claiming to own the '319 Patent in the *Nutrawise* action, Certified still submitted a sworn declaration in the instant case, claiming to own the '319 Patent. Also notable is Certified's failure to comply with the Court's September 14, 2018 Order in this case. Although the Court ordered Certified, Mr. Alkayali, Mr. Tauler, and Tauler Smith, LLP to pay their sanctions by October 31, 2018 and file a Notice with the Court that the sanctions were paid within three days of payment, as of the date of this Order, no notice has been filed. To say the least, Certified's brazen litigation

---

[6] Certified does cite to *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011) for its holding that it is appropriate to use "litigation to shut down a competitor who uses unfair trade practices." Doc. 56, p. 6. That case is inapposite. Unlike Certified, the *TrafficSchool* plaintiffs prevailed on their Lanham Act claim after a bench trial. Accordingly, Certified cannot use *TrafficSchool* to show that a plaintiff that loses all of its claims on summary judgment somehow advances the anti-competitive purpose of the Lanham Act.

tactics and utter disregard for this Court's own order suggest a lack of respect for the rule of law that should be deterred. Therefore, the Court finds Certified's behavior underscores the need for deterrence, a factor weighing in favor of finding its lawsuit to be an "exceptional case."

Because Avicenna has demonstrated by a preponderance of the evidence that (1) Certified's claims were frivolous and substantively unreasonable; (2) Certified behaved unreasonably throughout the present lawsuit; and (3) the deterrence consideration is relevant, the Court finds this case to be "exceptional," warranting attorneys' fees under the Lanham Act.

## B. Reasonableness

Having established that an award of attorneys' fees is justified, the Court next evaluates the reasonableness of Avicenna's claimed fees. Reasonable attorneys' fees must be calculated using the "lodestar" method, which is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). Here, Certified does not object to Avicenna's counsel's hourly rates, which the Court finds to be reasonable.[7] Certified does object, however, to Avicenna's total fees, contending that (1) the Court dismissed only one claim against Certified, entitling Avicenna to only one third of its requested fees, and (2) Certified's counsel spent only 210.55 hours compared to Avicenna's 386.1 hours.

---

[7] Avicenna's lead counsel, Michael Adams, a partner at Rutan & Tucker, LLP with more than 20 years litigation experience, billed hourly rates of $550 in 2017 and $600 in 2018. Brian Berggren, a Rutan & Tucker, LLP associate with seven years litigation experience, billed hourly rates of $370 in 2017 and $425 in 2018. Proud Usahacharoenporn, another Rutan & Tucker, LLP associate with seven years litigation experience, billed an hourly rate of $425. Donald Moody, an attorney with Genga Law with 15 years litigation experience, billed an hourly rate of $350. John Genga, a partner with Genga Law with over 30 years litigation experience, billed an hourly rate of $500. Adams Decl., Doc. 50-2.

First, Certified contends Avicenna cannot claim fees for work performed on the two claims that were not dismissed. Doc. 56, p. 9. Certified is mistaken. The Court dismissed all three of its claims: the Lanham Act claim and the two state law claims for unfair competition and false advertising. *See* Doc. 47.

To the extent Certified intended to argue that Avicenna can only recover for fees related to its work on the Lanham Act claim, not the two state law claims, its argument is well taken. Typically, "a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for work related to the Lanham Act claims." *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000). A party can recover for non-Lanham Act claims, however, if "the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." *Id.*

In Certified's action, the claims are inextricably intertwined. The two state law claims for unlawful business practices and false and misleading advertising relied on many of the same factual allegations as the Lanham Act claim for false advertising. For example, all three claims require some form of deceptive advertising and a showing that the deceptive advertising is likely to influence the public's purchasing decisions. *Compare* Section 43(a) of the Lanham Act (requiring, among other elements, that the plaintiff show (1) defendant made false or misleading statements as to his own product; (2) actual deception, or at least a tendency to deceive a substantial portion of the intended audience; and (3) deception likely to influence purchasing decisions) *with Chapman v. Skype Inc.*, 162 Cal. Rptr. 3d 864, 871-72 (Cal. Ct. App. 2013) (discussing that to prevail on a California state law claim for unfair competition and false advertising, "it is necessary only to show that members of the public are likely to be deceived [by false advertising]"); *see also Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1182 n.1 (9th Cir. 2013) ("This court has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act."). Thus, all three claims depended upon the same primary factual allegations: that Avicenna fraudulently advertised its product as "patented," a

practice likely to influence consumers' purchasing decisions. Certified makes no argument to the contrary. Accordingly, the Court finds the three claims to be so "inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie*, 217 F.3d at 1069.

Second, Certified objects to the reasonableness of Avicenna's fees because compared to the 386.1 hours of attorney time Avicenna's counsel spent on the case, Certified's counsel spent only 210.55 hours. Certified, however, does not offer any authority to show how its comparison demonstrates a lack of reasonableness. Further, the amount of time Certified spent to lose its case is not necessarily an accurate barometer of the amount of time Avicenna reasonably spent to prevail. "Comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party . . . does not necessarily indicate whether the hours expended by the party seeking fees were excessive." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001). Indeed, "any such comparison must carefully control for . . . the possibility that the prevailing party's attorney—who, after all, did prevail—spent more time because she did better work." *Id.* The Court is not persuaded that the parties' relative hours worked somehow demonstrates a lack of reasonableness.

Finally, the Court has reviewed Avicenna's supporting documentation of its attorneys' billed hours. Certified does not object to any particular billing entries, and the Court has not identified any that appear unreasonable. In light of the foregoing, as well as Avicenna's attorneys' detailed invoices and declaration, the Court finds the hours Avicenna spent defending the lawsuit were reasonable.

### III. CONCLUSION

For the previous reasons, Defendant's motion for attorneys' fees, Doc. 50, is **GRANTED**. The Court awards Defendant **$168,835** in attorneys' fees against Plaintiff.

**IT IS SO ORDERED.**

Dated: November 7, 2018

HON. ROGER T. BENITEZ
United States District Judge